IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ERIN SAX AND
SANDY PHILLIPS-JOHNSON

PLAINTIFFS

VERSUS

19 CV 8187
NO. _____

LUCKY 8 TV, LLC

DEFENDANT

JURY TRIAL DEMANDED

COMPLAINT

This is a civil action to recover actual, compensatory, and punitive damages for the Defendant's retaliatory and wrongful termination of the plaintiffs' employment in violation of public policy. The following averments support this civil action:

PARTIES

1. The plaintiff, Erin Sax, is an adult resident citizen of California. She files this civil action *pro se*.

2. The plaintiff, Sandy Phillips-Johnson, is an adult resident citizen of California. She files ths civil action *pro se*.

3. The Defendant Lucky 8 TV, LLC ("Lucky 8") is a New York limited liability company with its principal place of business at 99 Hudson Street, 2nd Floor, New York, New York 10013. Lucky 8 may be served with process by service of a Complaint and and summons to its registered agent, Ms. Kimberly Woodard, 219 Alexander Avenue, Montclair, New Jersey 07043.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1332, this Court has original subject matter jurisdiction of this civil action as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

5. Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district since Lucky 8 resides in the Southern District of New York.

## CAUSE OF ACTION

6. The Defendant Lucky 8 describes itself as "a full-service unscripted production company founded in 2014."

7. Erin Sax is an award winning director, executive producer, and show-runner for feature documentaries, feature films, non-fiction television, national and international commercials, branded content, and music videos. Ms. Saks is also an award winning singer/songwriter.

8. Sandy Phillips-Johnson is a seasoned news producer with more than twenty (20) years of experience working with Emmy-award winning teams. Ms. Phillips-Johnson produced number one rated news shows for their markets and worked on commercial productions for nationally known brands.

9. The plaintiffs were employed by the Defendant Lucky 8 to assist in the production of an unscripted documentary regarding the impact of the "opioid

epidemic" in middle-America.

10. In order to tell the story cast members and crew members of the production team would embed in a local jail, in Indiana; in known areas of drug activity in a small community, in Kentucky; and with local law enforcement agencies, in Indiana and Kentucky.

11. Cast members included a journalist, a border patrol agent, and several individuals with prior histories of drug abuse and in varying stages of recovery.

12. In order to participate as cast members these individuals were required to sign non-disclosure agreements and waivers of liability for any harm which might befall them during the production.

13. Unique to this production were the cast members recruited to serve as embeds in the local community in known areas of drug activity.

14. These cast members were known as the "street team" and strict confidentiality of their status as cast embers of a nationally broadcast production was imperative for their safety.

15. The "street team" cast members were expected to seek out drug activity and engage drug dealers to purchase narcotic drugs.

16. The activities of the "street team" were not supervised by local law enforcement and served no legitimate law enforcement purpose.

17. In order to assist the "street team" to embed Ms. Sax and Ms. Phillips-Johnson leased property in their own names for the "street team" to use and reside in during the production.

18. Ms. Sax and Ms. Phillips-Johnson were assured by management level officials of the Defendant Lucky 8 that they would be fully reimbursed for any expenses associated with the leasing of the properties used in the production.

19. Almost from the inception of their work producing the show, Ms. Sax and Ms. Phillips-Johnson observed an attitude of complete disinterest in the health, safety, security, or confidentiality of cast members and a tolerance of unsafe and illegal activity by cast and crew by the Defendant Lucky 8.

20. Ms. Sax and Ms. Johnson-Phillips collectively and individually made complaints to management level officials of Lucky 8 regarding numerous unsafe and illegal practices involving the "jail team" and the "street team."

21. Ms. Sax and Ms Phillips-Johnson collectively and individually made complaints about illegal activities taking place on and off set by cast and crew involved in the "jail team" and the "street team" part of the production.

22. Specifically with respect to the "jail team," Ms. Sax complained about the unlawful continuing detention of a "jail team" member who had asked to be released from detention because of mortal fear of bodily harm or death.

23. Specifically with respect to the "street team," Ms. Sax and Ms. Phillips Johnson complained about the use of drugs by cast and crew, including in the premises leased in their names, the possession of drugs by cast and crew, and the purchase and distribution of drugs by cast and crew.

24. None of the drug activity Ms. Sax and Ms. Phillips-Johnson complained about served the purpose of aiding public officers in the performance of their duties.

25. In fact, Lucky 8 required Ms. Sax and Ms. Phillips-Johnson to keep law enforcement in the dark regarding the activities of the "street team."

26. As a matter of public policy, "[t]he regulation of controlled substances in the Commonwealth [of Kentucky] is important and necessary for the preservation of public safety, and public health."  See Kent. Rev. Stat. § 218A.005.

27. In support of this stated public policy, the Commonwealth of Kentucky criminalizes the possession of numerous controlled substances and narcotic drugs, and marijuana.  See, e.g., Kent. Rev. Stat. § 218A.1422 (Marijuana).

28. Within a matter of days or weeks after making their complaints regarding numerous unsafe and illegal practices involving the "jail team" and the "street team," the Defendant Lucky 8 retaliated against Ms. Sax and Ms. Phillips-Johnson by terminating their employment with the production.

29. The termination of the plaintiffs for reporting unsafe and illegal activity to

the management of the Defendant Lucky 8 violates Kentucky and Indiana public policy and § 740 of the New York Labor Law.

30. The plaintiffs considered the unsafe and illegal activities occurring on and off set to constitute a flaw in the production which they were duty bound to report and remedy for the good of the production and the cast and crew.

31. In fact, the Defendant Lucky 8 considered the unsafe and illegal activities occurring on and off set to constitute a feature of the production which they had no intention of remedying.

32. The Defendant Lucky 8 embarked on producing an unscripted documentary regarding the impact of the "opioid epidemic" in middle-America for the sole purpose of monetizing the misery of others with no regard for the law, the public good, or decency.

WHEREFORE, PREMISES CONSIDERED, the plaintiffs pray for actual damages for lost income and other tangible economic harm suffered as a result of the wrongful termination of their employment; compensatory damages for mental anguish, emotional distress, injury to reputation or standing, inconvenience, and other intangible harm; and for punitive damages in an amount to be determined by the trier of fact but no less than $75,000.01. The plaintiffs further pray for such further and additional relief the Court deems appropriate under the circumstances.

PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.  I agree to notify the Clerk's Office in writing of any changes to my mailing address.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted, this the _____ day of _____, 2019.

_____  
Erin Sax, *Pro Se*  
323 Oceano Avenue  
Los Angeles, California 90049  
erin.sax@gmail.com

_____  
Sandy Phillips-Johnson, *Pro se*  
734 North Hayworth Avenue,  
Apt. 3  
Los Angeles, California 90046  
sandyphillipsjohnson@gmail.com